## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**PAUL K. MARSHALL, II, D.M.D.,**
individually and behalf of all others similarly
situated,

        Plaintiff,

v.

**SAFETY INSURANCE COMPANY
and SAFETY INDEMNITY INSURANCE
COMPANY**
        Defendants.

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Paul Marshall, II, D.M.D. ("Plaintiff"), both individually and on behalf of all others similarly situated, files this Class Action Complaint against Safety Insurance Company and Safety Indemnity Insurance Company (collectively, "Safety").  In support of his claims, Plaintiff states the following on information and belief, except where specifically identified as being based on personal knowledge:

### INTRODUCTION

1.      On personal knowledge, Plaintiff is the sole proprietor of a cosmetic dentistry practice, which occupies premises located at 306 Winter Street, Hyannis, Massachusetts 02601. To protect the business and the income from operation of the business, Plaintiff purchased a property insurance policy issued by Safety with policy number BMA0011624.

2.      Under Plaintiff's insurance policy (the "Policy"), Safety is responsible for receiving and managing claims and loss notices, responding to questions about insurance and coverage and paying claims for covered losses.

3.      The Policy constitutes a bilateral contract: Plaintiff agreed to pay monthly premiums to Safety, in exchange for Safety's promises of coverage for certain losses.

4.      Among other types of coverage, the Policy protects Plaintiff against a loss of business income due to a "suspension" of the business's "operations" due to direct physical loss of or damage to property at the premises of the business. This type of coverage is often referred to as business interruption coverage.

5.      The Policy also provides "Extra Expense" coverage, under which Safety promised to pay expenses incurred that would not have been incurred absent the physical loss of or physical damage to property at the premises of the business.

6.      Additionally, the Policy provides "Civil Authority" coverage, under which Safety promised to pay for loss of business income sustained when the action of a civil authority prohibits access to the business premises.

7.      Plaintiff duly complied with his obligations under the Policy, and paid the requisite premiums.

8.      Beginning in March 2020, Plaintiff was forced to suspend business operations due to the novel coronavirus, SARS-CoV-2, which causes the infectious disease referred to as COVID-19 (hereinafter "COVID-19") and/or related actions of civil authorities prohibiting access to and occupancy of the business. This suspension of the business's operations has caused Plaintiff to suffer significant losses and expenses.

9.      Under the Policy, Safety promised to cover Plaintiff's losses and expenses, and is obligated to pay for them. But in blatant breach of these contractual obligations, as well as Massachusetts General Laws Chapter 93A, §§ 2 and 11 and Chapter 176D § 9, Safety has refused to pay for these losses and expenses.

10.      Safety has failed to pay for similar losses and expenses of other insureds holding policies that are, in all material respects, identical.

## THE PARTIES

11.     On personal knowledge, Plaintiff Paul K. Marshall, II, D.M.D. is a Massachusetts resident and sole proprietor of a cosmetic dentistry practice which occupies premises located at 306 Winter Street, Hyannis, Massachusetts 02601.

12.     Defendant Safety Insurance Company is a corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 20 Custom House Street, Boston, Massachusetts 02110.

13.     Defendant Safety Indemnity Insurance Company is a corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 20 Custom House Street, Boston, Massachusetts 02110.

14.     Defendant Safety Insurance Company and Defendant Safety Indemnity Insurance Company are referred to herein collectively as "Safety".  According to its website, Safety is "one of the leading providers of Property and Casualty Insurance in Massachusetts, New Hampshire and Maine."  https://www.safetyinsurance.com/about/index.html.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332(d) because there is complete diversity between Safety and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Safety resides within this District, a substantial part of the events and/or omissions giving rise to the

claims occurred within this District and property that is subject of the action is located in this District.

17.    This Court has personal jurisdiction over Safety because Safety resides in Massachusetts, Plaintiff's claims arise out of, among other things, Safety conducting, engaging in, and/or carrying on business in Massachusetts, including, but not limited to, marketing its insurance policies and services within Massachusetts, developing relationships with brokers, agents, and customers within Massachusetts for the purpose of insuring property within Massachusetts; contracting to insure property in Massachusetts, including, but not limited to, the premises insured under Plaintiff's Policy; breaching contracts, including Plaintiff's Policy, in Massachusetts by failing to perform acts required by contract to be performed in Massachusetts; and investigating (or failing to investigate) and determining claims for insurance coverage made in Massachusetts, including claims made under Plaintiff's Policy.

## FACTUAL BACKGROUND

*The Policy*

18.    On personal knowledge, on or about January 29, 2020, Plaintiff renewed his insurance policy with Safety.  The policy has a policy period of January 29, 2020 to January 29, 2021.  The scheduled premises under the policy is 306 Winter Street, Hyannis, Massachusetts 02601.[1]

19.    The Policy is an all-risk insurance policy. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

20.    Consistent with the all-risk nature of the Policy, Safety specifically agreed to pay

---

[1] A true and correct copy of the policy that was provided to Plaintiff is attached to this complaint as Exhibit "A" and incorporated herein by reference. The Policy's identification of "Paul Marshall, III, DMD" as the insured is a typographical error.

for "direct physical loss of or damaged to Covered Property … caused by or resulting from any Covered Cause of Loss."

21.     In the Policy, Safety also promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. In particular, Safety promised to pay for "the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'" This coverage is specifically provided for in a section of the policy entitled "Business Income."

22.     Each of the operative terms of this coverage provision is defined as follows.

23.     "Business Income" means "(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred….; and (ii) Continuing normal operating expenses incurred, including payroll."

24.     "Operations" means "your business activities occurring at the described premises."

25.     "Period of restoration" means the period of time that:

   a.   Begins:

           (1) Immediately after the time of direct physical loss or damage for Business Income Coverage; or

           (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

       caused by or resulting from any Covered Cause of Loss at the described premises; and

   b.   Ends on the earlier of:

           (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

           (2) The date when business is resumed at a new permanent location

26.     "Covered Cause of Loss" means "Risks of Direct Physical Loss" unless excluded or limited.

27.     Another type of coverage provided by the Policy is for Extra Expense.   This

coverage is specifically provided for in a section of the Policy titled "Extra Expense."

28.     Pursuant to this section of the Policy, Safety promised to pay for "necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to the property at the described premises."

29.     Additionally, under the Policy, Safety also promised to provide coverage for "Extended Business Income."  Specifically, Safety promised to:

pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and 'operations' are resumed; and

(b) Ends on the earlier of:

(i)  The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

(ii)  30 consecutive days after the date determined in (2)(a) above.

30.     The Policy also provides "Civil Authority" coverage for "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."  This coverage for Business Income begins "immediately after the time of that action and will apply for a period of up to 30 consecutive days after coverage begins."  This coverage for Extra Expense "will begin immediately after the time of that action and ends: (1) 30 consecutive days after the time of that action; or (2) When your Business Income coverage ends; whichever is later."

31.     This Civil Authority provision is an independent basis for business interruption coverage. That is, it can be triggered even when the standard business interruption coverage is not.

32.     Plaintiff's Policy does not contain any exclusion that would apply to allow Safety to deny coverage for losses caused by the interruption of Plaintiff's business operations and the

actions of civil authorities.

33.     Loss of use of property that has not been physically altered constitutes "physical loss of or damage to Covered Property" for purposes of insurance coverage under the Policy.

34.     As the drafter of the Policy, if Safety had wished to exclude loss of use of property that has not been physically altered or deformed from coverage as "physical loss of or damage to Covered Property," it could have used explicit language to do so, but did not.

35.     Accordingly, because the Policy is an all-risk policy and does not specifically exclude the losses that Plaintiff has suffered, those losses are covered.

***Plaintiff's covered losses***

36.     The presence of novel coronavirus, SARS-CoV-2, is pervasive and has permeated the Commonwealth of Massachusetts, the country and the globe.  There have been confirmed cases of COVID-19 in every city and town in the Commonwealth, including over 4,00 confirmed cases in the town of Barnstable and over 1,800 confirmed cases in Barnstable County. https://www.mass.gov/info-details/covid-19-response-reporting.  The public health emergency created by COVID-19 has prompted actions by civil authorities throughout the United States ("Civil Authority Actions"), including, but not limited to, the Commonwealth of Massachusetts.

37.     Consistent with the actions of all states nationwide, on March 10, 2020, the Governor of Massachusetts, Charlie Baker, declared a public health emergency in response to the appearance of COVID-19 in the Commonwealth of Massachusetts.  As of that date, according to the Centers for Disease Control and Prevention (the "CDC"), there were more than 600 confirmed cases of COVID-19 in the United States, and 25 of those cases resulted in death.  In addition, as of that date, Governor Baker reported that there were 91 presumed positive cases of COVID-19 in

the Commonwealth.

38.     As of March 22, 2020, the Massachusetts Department of Public Health had reported 646 cases of COVID-19, including 5 deaths, in the Commonwealth of Massachusetts, affecting 13 of the Commonwealth's 14 counties.

39.     On March 23, 2020, Governor Baker issued COVID-19 Order No. 13, which required all businesses and organizations that do not provide COVID-19 essential services to close their physical workplaces and facilities to workers, customers and the public from 12:00 noon on March 24, 2020 to 12:00 noon on April 7, 2020.   On March 31, 2020, Governor Baker issued COVID-19 Order No. 21, which extended the closures required by COVID-19 Order No. 13 to May 4, 2020.   On April 28, Governor Baker issued COVID-19 Order No. 30, which extended the closures required by COVID-19 Order Nos. 13 and 21 to May 18, 2020.   Although the restrictions on businesses put in place by these Orders have been lifted gradually since May 18, 2020, many restrictions remain in effect.

40.     As a result of the foregoing facts and circumstances, there has been direct physical loss of and/or damage to property at the premises covered under Plaintiff's policy by, among other things, the property being damaged, access to the property being denied, patients being prevented from physically occupying the property, the property being physically uninhabitable by patients, the function of the property being nearly eliminated or destroyed, and/or a suspension of business operations occurring at the property.   Plaintiff did not treat patients from approximately March 13, 2020 until June 8, 2020 with the exception of very few patients that he treated on an emergency basis.   Plaintiff has also incurred extra expenses in connection with his efforts to avoid or minimize the suspension of business operations, continue business operations, and repair or replace property, including, but not limited to, expenses related to the installation of new equipment and fixtures

designed to minimize the spread of COVID-19, expenses related to the purchase of personal protective equipment (PPE) and other supplies and expenses related to cleaning and sanitizing the premises, that he would not otherwise have incurred absent the direct physical loss and/or physical damage to property at the insured premises.

41.     Plaintiff's business has suffered a suspension of normal business operations as defined in the Policy in terms of a significant slowdown of business operations, sustained losses of business income, and incurred expenses.

42.     These losses and expenses have continued to accrue through the date of filing of this action.

43.     These losses and expenses are not excluded from coverage under the Policy. And because the Policy is an all-risk policy, and Plaintiff has complied with his contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

44.     Accordingly, Plaintiff provided notice of his losses and expenses to Safety, consistent with the terms and procedures of the Policy.

45.     But contrary to the plain language of the Policy, and to Safety's corresponding promises and contractual obligations, by letter dated April 28, 2020, Safety, through its counsel, refused to pay for Plaintiff's covered losses and expenses.

## CLASS ACTION ALLEGATIONS

46.     The class claims all derive directly from a single course of conduct by Safety: its systematic and uniform refusal to pay insureds for covered losses and the actions taken by civil authorities to suspend business operations.

47.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, both individually and on

behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

48.     Plaintiff seeks to represent a class of persons and defined as follows (collectively, the "Class" or "Classes"):

a)     All persons and entities with Business Income coverage and/or Extended Business Income coverage under a property insurance policy issued by Safety that suffered a suspension of business operations and for which Safety has either actually denied or stated that it will deny a claim for the losses or has otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses (the "Business Income Coverage Class").

b)     All persons and entities with Extra Expense coverage under a property insurance policy issued by Safety that suffered a suspension of business operations and for which Safety has either actually denied or stated that its will deny a claim for the expenses or has otherwise failed to acknowledge, accept as a covered expense, or pay for the covered expenses (the "Extra Expense Coverage Class").

c)     All persons and entities with Civil Authority coverage under a property insurance policy issued by Safety that suffered an actual loss of Business Income and/or Extra Expense caused by an action of a civil authority that prohibited access to the premises, and for which Safety has either actually denied or stated that it will deny a claim for the losses or has otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses (the "Civil Authority Coverage Class").

49.     Excluded from each of the proposed Classes is Safety and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns;

governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

50.     Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

51.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity and Ascertainability**

52.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, hundreds of members of each proposed Class, and these individuals and entities are spread out across Massachusetts, New Hampshire and Maine.

53.     The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Safety's or its agents' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Predominance of Common Issues**

54.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact that predominate over any questions affecting only individual Class members. Safety issued all-risk policies to all the members of each proposed Class in exchange for payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

    a)      Whether Plaintiff and Class members suffered a covered loss under the

policies issued by Safety to members of the Class;

b)      Whether Safety wrongfully denied all claims based on the assertion that any suspension, interruption or slowdown of business operations being attributable to COVID-19 is not a covered loss;

c)      Whether Safety's Business Income and Extended Business Income coverage applies to a suspension of business operations caused by the presence or threat of COVID-19;

d)      Whether Safety's Extra Expense coverage applies to expenses incurred to minimize the risks presented by COVID-19;

e)      Whether Safety's Civil Authority coverage applies to a loss of Business Income caused by the orders of local, municipal, city, county, and/or state governmental entities requiring the suspension of business operations;

f)      Whether Safety has breached its contracts of insurance through a uniform and blanket denial of all claims for business losses related to COVID-19 and/or the actions of civil authorities taken in response to the risks presented by COVID-19;

g)      Whether Safety misrepresented pertinent facts or insurance policy provisions relating to coverages at issue, refused to pay claims without conducting a reasonable investigation based upon all available information, and/or failed to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear in violation of M.G.L. c. 176D § 9 and M.G.L. c. 93A §§ 2 and 11.

h)      Whether Plaintiff and Class members suffered damages as a result of Safety's actions; and

i)      Whether Plaintiff and Class members are entitled to an award of reasonable

attorneys' fees, interest, and costs.

**Typicality**

55.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of Class members and arise from the same course of conduct by Safety. Plaintiff and the other Class members are all similarly affected by Safety's refusal to pay claims under their property insurance policies. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Safety engaged. The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

**Adequacy of Representation**

56.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation.

57.     Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. Neither Plaintiff nor his counsel have interests adverse to those of Class members.

**Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests**

58.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiff seeks class-wide adjudication as to the interpretation and scope of Safety's property insurance policies that use the same language and terms as the Policy. The prosecution of separate actions by individual members of the proposed Classes would create an imminent risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Safety.

**Final Injunctive and/or Corresponding Declaratory Relief with respect to the Class is Appropriate**

59.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Safety acted or refused to act on grounds generally applicable to Plaintiff and the members of the Classes, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class members. The Class members' claims all derive directly from Safety's systematic and uniform refusal to pay insureds for any losses suffered due to risk of infection of COVID-19 and/or actions of civil authorities prohibiting access to and occupancy of their businesses. Safety's actions or refusals to act are grounded upon the same generally applicable legal theories.

**Superiority**

60.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy. The common questions of law and of fact regarding Safety's conduct and the interpretation of the common language in their property insurance policies predominate over any questions affecting only individual Class members.

61.     Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult for all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Classes would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

62.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more

effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D).

63.     Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## CAUSES OF ACTION

## COUNT I:  DECLARATORY JUDGMENT

### (On behalf of the Business Income Coverage Class)

64.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65.     Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

66.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

67.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class

members, are insurance contracts under which Safety was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy and the policies of other Business Income Coverage Class members.

68.     In the Policy, Safety promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. Specifically, Safety promised to pay for losses of business income sustained as a result of a suspension of business operations during the period of restoration.

69.     Plaintiff and Business Income Coverage Class members suffered direct physical loss of and/or damage to their insured premises, resulting in interruptions or suspensions of business operations at the premises. These suspensions and interruptions have caused Plaintiff and Business Income Coverage Class members to suffer losses of business income.

70.     These suspensions and interruptions, and the resulting losses, triggered business income coverage under the Policy and other Business Income Coverage Class members' policies.

71.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

72.     Safety, without justification, disputes that the Policy and other Business Income Coverage Class members' policies provide coverage for these losses.

73.     Plaintiff seeks a Declaratory Judgment that his Policy and other Business Income Coverage Class members' policies provide coverage for the losses of business income attributable to the facts set forth above.

74.     An actual case or controversy exists regarding Plaintiff's and other Business Income Coverage Class members' rights and Safety's obligations to reimburse Plaintiff and other Business Income Coverage Class members for the full amount of these losses. Accordingly, the

Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that Plaintiff's Policy and other Business Income Coverage Class members' policies provide coverage for Class members' losses of business income.

## COUNT II:  BREACH OF CONTRACT

### (On behalf of the Business Income Coverage Class)

75.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76.    Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

77.    Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Safety was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

78.    In the Policy, as well as the policies of other Business Income Coverage Class members, Safety promised to pay for losses of business income incurred as a result of perils not excluded under the Policy. Specifically, Safety promised to pay for losses of business income sustained as a result of a suspension of business operations during the period of restoration.

79.    Plaintiff and Business Income Coverage Class members have suffered a direct physical loss of and/or damage to their insured premises as a result of interruptions or suspensions of business operations at these premises.  These interruptions and suspensions have caused Business Income Coverage Class members to suffer losses of business income.

80.    These losses triggered business income coverage under both Plaintiff's Policy and other Business Income Coverage Class members' policies.

81.     Plaintiff and the other Business Income Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

82.     Safety, without justification and in bad faith, has denied coverage and refused performance under Plaintiff's Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Safety is in breach of Plaintiff's Policy and other Business Income Coverage Class members' policies.

83.     As a result of Safety's breaches of Plaintiff's Policy and other Business Income Coverage Class members' policies, Plaintiff and other Business Income Coverage Class members have suffered actual and substantial damages for which Safety is liable.

WHEREFORE, Plaintiff, both individually and on behalf of other Business Income Coverage Class members, seeks compensatory damages resulting from Safety's breaches of Plaintiff's Policy and other Class Members' policies and seeks all other relief deemed appropriate by this Court.

## COUNT III:  DECLARATORY JUDGMENT

### (On behalf of the Extra Expense Coverage Class)

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     Plaintiff brings this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

86.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

87.     Plaintiff's Policy, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Safety paid premiums in exchange for promises to

Case 1:20-cv-11543-ADB  Document 1  Filed 08/17/20  Page 19 of 28


pay Extra Expense Coverage Class members' losses for claims covered by Plaintiff's Policy and the policies of other Expense Coverage Class members.

88.     Specifically, Safety promised to pay for Extra Expenses incurred by Plaintiff and other Extra Expense Coverage Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses incurred to avoid or minimize the suspension of business operations, continue business operations, and repair or replace property.

89.     Plaintiff and Extra Expense Coverage Class members suffered direct physical loss of and/or damage to their insured premises, resulting in suspensions or interruptions of business operations at these premises.  As a result, Plaintiff and other Extra Expense Coverage Class members have incurred Extra Expenses, as defined in Plaintiff's Policy and other Extra Expense Coverage Class members' policies.

90.     These Expenses triggered Extra Expense coverage under Plaintiff's Policy and other Extra Expense Coverage Class members' policies.

91.     Plaintiff and the other Extra Expense Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

92.     Safety, without justification, disputes that Plaintiff's Policy and other Extra Expense Coverage Class members' policies provide coverage for these Extra Expenses.

93.     Plaintiff, both individually and on behalf of the other members of the Extra Expense Coverage Class, seeks a Declaratory Judgment that his Policy, and the policies of other members of the Extra Expense Coverage Class, provide coverage for these Extra Expenses.

94.     An actual case or controversy exists regarding Extra Expense Coverage Class members' rights and Safety's obligations under Extra Expense Coverage Class members' policies

to reimburse Class members for these Extra Expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that Plaintiff's Policy and other Extra Expense Coverage Class members' policies provide coverage for Class members' Extra Expenses.

## COUNT IV: BREACH OF CONTRACT

### (On behalf of the Extra Expense Coverage Class)

95.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.     Plaintiff brings this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

97.     Plaintiff's Policy and the policies of other Extra Expense Coverage Class members, are insurance contracts under which Safety was paid premiums in exchange for promises to pay Extra Expense Coverage Class members' losses for claims covered by policies.

98.     Specifically, Safety promised to pay for Extra Expenses incurred by Plaintiff and other Extra Expense Coverage Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses incurred to avoid or minimize the suspension of business operations, continue business operations, and repair or replace property.

99.     Plaintiff and Extra Expense Coverage Class members suffered direct physical loss of and/or damage to their insured premises, resulting in suspensions and interruptions of business operations at these premises.  These suspensions and interruptions have caused Extra Expense Coverage Class members to incur Extra Expenses.

100.    These Expenses triggered Extra Expense coverage under Plaintiff's Policy and other Extra Expense Coverage Class members' policies.

101.    Plaintiff and the other Extra Expense Coverage Class members have complied with all applicable provisions of their policies, including payment of premiums.

102.    Safety, without justification and in bad faith, has denied coverage and refused performance under Plaintiff's Policy and other Extra Expense Coverage Class members' policies by denying coverage for these Extra Expenses. Accordingly, Safety is in breach of Plaintiff's Policy and other Extra Expense Coverage Class members' policies.

103.    As a result of Safety's breaches of Plaintiff's Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Safety is liable.

WHEREFORE, Plaintiff, individually and on behalf of other Extra Expense Coverage Class members, seeks compensatory damages resulting from Safety's breaches of Plaintiff's Policy and other Extra Expense Coverage Class Members' policies and seeks all other relief deemed appropriate by this Court.

## COUNT V:  DECLARATORY JUDGMENT

### (On behalf of the Civil Authority Coverage Class)

104.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

105.    Plaintiff brings this Count both individually and on behalf of the other members of the Civil Authority Coverage Class.

106.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

107.    Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Safety was paid premiums in exchange for promises to pay Civil Authority Coverage Class members' losses for claims covered by the policies.

108.    In Plaintiff's Policy and other Class members' policies, Safety promised to pay for losses of business income sustained and extra expenses incurred when, among other things, a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

109.    Plaintiff and other Civil Authority Coverage Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited public access to insured premises under Plaintiff's Policy and Civil Authority Coverage Class members' policies.

110.    These losses satisfied all requirements to trigger Civil Authority coverage under Plaintiff's Policy and other Civil Authority Coverage Class members' policies.

111.    Plaintiff and the other Class members have complied with all applicable provisions of their policies, including payment of premiums.

112.    Safety, without justification, disputes that Plaintiff's Policy and other Class members' policies provides coverage for these losses.

113.    Plaintiff seeks a Declaratory Judgment that his Policy and other Civil Authority Coverage Class members' policies provide coverage for the losses that they have sustained and extra expenses they have incurred caused by actions of civil authorities.

114.    An actual case or controversy exists regarding Civil Authority Coverage Class members' rights and Safety's obligations under Civil Authority Coverage Class members' policies to reimburse Civil Authority Coverage Class members for these losses and extra expenses.

Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff, both individually and on behalf of other Civil Authority Coverage Class members, requests that this Court enter a Declaratory Judgment declaring that Plaintiff's Policy provide Civil Authority coverage for the losses and extra expenses incurred by Plaintiff and the other Class members.

## COUNT VI: BREACH OF CONTRACT

### (On behalf of the Civil Authority Coverage Class)

115.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

116.    Plaintiff brings this Count both individually and on behalf of the other members of the Civil Authority Coverage Class.

117.    Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Safety was paid premiums in exchange for promises to pay Civil Authority Coverage Class members' losses and expenses covered by their policies.

118.    In Plaintiff's Policy and other Civil Authority Coverage Class members' policies, Safety promised to pay for losses of business income sustained and extra expenses incurred when a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

119.    Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited public access to insured premises under Plaintiff's Policy and Civil Authority Coverage Class members' policies.

120.    These losses satisfied all requirements to trigger Civil Authority coverage under

Plaintiff's Policy and other Civil Authority Coverage Class members' policies.

121.    Plaintiff and the other Civil Authority Coverage Class members have complied with all applicable provisions of their policies, including payment of premiums.

122.    Safety, without justification and in bad faith, has refused performance under Plaintiff's Policy and other Civil Authority Coverage Class members' policies by denying coverage for these losses and expenses. Accordingly, Safety is in breach of Plaintiff's Policy and other Civil Authority Coverage Class members' policies.

123.    As a result of Safety's breaches of Plaintiff's Policy and other Civil Authority Coverage Class members' policies, Plaintiff and other Civil Authority Coverage Class members have suffered actual and substantial damages for which Safety is liable.

WHEREFORE, Plaintiff seeks compensatory damages resulting from Safety's breaches of Plaintiff's Policy and other Civil Authority Coverage Class members' policies. and seeks all other relief deemed appropriate by this Court.

## COUNT VII:  VIOLATION OF MASSACHUSETTS GENERAL LAWS, CHAPTER 93A
### (On Behalf of the Class)

124.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.    Plaintiff brings this Count both individually and on behalf of other members of the Class pursuant to M.G.L. c. 93A §§ 2 and 11.  M.G.L. c. 93A § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  M.G.L. c. 93A § 11 permits any person engaged in the conduct of trade or commerce and injured by a violation of M.G.L. c. 93A § 2 to bring a civil action, including a class action, for damages and injunctive relief.

126.    Plaintiff alleges that Safety willfully and knowingly committed unfair and deceptive business acts and/or practices in violation of M.G.L. c. 93A §§ 2 and 11.

127.    Safety has engaged in unfair claims settlement practices in violation of, *inter alia*, M.G.L. c. 176D § 3(9)(a), (d) and (f) by, among other things, misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue, refusing to pay claims without conducting a reasonable investigation based upon all available information, and failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

128.    For example, Safety denied Plaintiff's claims for coverage based on false contentions to the effect that the losses and expenses claimed were not caused by a direct physical loss of or damage to property at the insured premises.   These statements constitute "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" in violation of both M.G.L. c. 176D § 3(9)(a) and M.G.L. c. 93A §§ 2 and 11.

129.    Similarly, Safety's blanket denials of coverage for claims arising due to COVID-19 and/or actions of civil authorities, together with its other unfair claims settlement practices, constitute "refusing to pay claims without conducting a reasonable investigation based upon all available information" in violation of both M.G.L. c. 176D § 3(9)(d) and M.G.L. c. 93A §§ 2 and 11.

130.    Likewise, Safety's blanket denials of coverage for claims arising due to COVID-19 and/or actions of civil authorities, together with its other unfair claims settlement practices, constitute "failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" in violation of both M.G.L. c. 176D § 3(9)(f) and M.G.L. c. 93A §§ 2 and 11.

131.    As a result of these violations, which occurred primarily and substantially within the Commonwealth of Massachusetts, Plaintiff and other members of the Class were injured by suffering insured losses for which Safety has refused to provide coverage.

132.    These acts and practices are unfair and deceptive in material respects, offend public policy, are immoral, unethical, oppressive and unscrupulous and violate M.G.L. 176D § 3(9) and M.G.L. c. 93A § 2. These acts and practices also violate 940 C.M.R. § 3.05, which provides, *inter alia*, that "[n]o claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect."

133.    As a direct and proximate result of Safety's unfair and deceptive acts and practices, Plaintiff and the Class have suffered injury.

134.    Plaintiff and other members of the Class would not have incurred these losses if Safety had not engaged in acts and practices that were unfair and deceptive.

135.    Based on the foregoing, Plaintiff and the other members of the Class are entitled to all remedies available pursuant to M.G.L c. 93A, including, but not limited to, refunds, actual damages, double or treble damages, attorneys' fees and other reasonable costs.

136.    Pursuant to M.G.L. c. 231, § 6B, Plaintiff and other members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Safety's wrongful conduct.  The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff and other members of the Class are entitled to interest in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court enter judgment in his favor and

against Safety, as follows:

A.    Entering an order certifying the proposed Classes, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

B.    Entering declaratory judgments on Counts I, III and V in favor of Plaintiff and the members of the Business Income Coverage Class, Extra Expense Coverage Class and Civil Authority Coverage Class providing that:

    i.    All Business Income, Extra Expense and Civil Authority losses and expenses incurred and sustained based on the facts and circumstances set forth above are insured and covered losses and expenses under Plaintiff's Policy and Class members' policies; and

    ii.    Safety is obligated to pay for the full amount of the Business Income, Extra Expense and Civil Authority losses and expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above as insured and covered losses and expenses under Plaintiff's Policy and Class members' policies;

C.    Entering judgments on counts II, IV and VI in favor of Plaintiff and the members of the Business Income Coverage Class, Extra Expense Coverage Class and Civil Authority Coverage Class, entering judgment on count VII in favor of the Class, and awarding actual, double, treble and/or other statutory damages in amounts to be determined at trial, as applicable;

D.    Entering an order requiring Safety to pay both pre- and post-judgment interest on any amounts awarded;

E.      Entering an order awarding costs and attorneys' fees; and

F.      Granting such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Dated: August 17, 2020                          **WHATLEY KALLAS, LLP**

                                                 /s/ *Patrick J. Sheehan*
                                                 Patrick J. Sheehan (BBO# 639320)
                                                 101 Federal Street, 19th Floor
                                                 Boston, MA 02110
                                                 Tel:  (617) 573-5118
                                                 Fax:  (800) 922-4851
                                                 psheehan@whatleykallas.com

                                                 *Attorneys for Plaintiff*